FILED
2019 Jul-29 PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MELISSA GAY WOOD, | } |
| Plaintiff, | } |
| v. | } Civil Action No.: 4:18-CV-558-RDP |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | } |
| Defendant. | } |

## MEMORANDUM DECISION

Plaintiff Melissa Gay Wood ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed an application for DIB on June 11, 2015, alleging a disability onset date of November 10, 2014 due to heart attacks, mitral valve prolapse, underactive thyroid, depression, acid reflux, high blood pressure, and arthritis in her hands and wrists. (R. 111, 175-76, 192). Plaintiff's application was initially denied on August 20, 2015. (R. 113-15). Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") Paul W. Johnson. (R. 120-21, 138-43, 163). On December 13, 2016, the claimant appeared in Anniston, Alabama while the ALJ

presided over the video hearing from Montgomery, Alabama. (R. 11). In his decision dated March 30, 2017, the ALJ determined that Plaintiff was not disabled under the Act from the alleged onset date through the date of decision. (R. 18). On February 6, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1-6). Because the denial of review by the Appeals Council constitutes the final act of the Commissioner, the case is now ripe for this court's review.

## II.     Facts

Plaintiff was born on August 11, 1959 and was 55 years old on the date of alleged disability onset. (R. 98, 188). She is a high school graduate and studied clerical key punch at a business college. (R. 85, 102, 110, 193). On November 10, 2014, Plaintiff left her most recent work at Honda due to her alleged disability. (R. 192).

On January 23, 2009, Plaintiff complained to her primary care physician, Dr. William Perry, that she was experiencing numbness in the left hand, which Dr. Perry identified as "[m]ost likely carpal tunnel. If it does not get better in a month wearing a split will do nerve conduction." (R. 324). On September 29, 2009, Plaintiff complained to Dr. Perry about numbness in her hands, toes, and leg, as well as overall fatigue. (R. 328). At that visit, Dr. Perry gave her a vitamin B12 shot and suctioned a ganglion cyst on her ankle. (R. 328). Plaintiff received vitamin B12 shots for fatigue on eight other occasions between her September 2009 visit and February 12, 2015. (R. 350). At a September 27, 2010 visit, Dr. Perry wrote, "Still having the fatigue. She does mention snoring, probably need to test her for sleep apnea…Still on the Effexor and the Nexium, refills given." (R. 323). Plaintiff again complained to Dr. Perry about fatigue at a March 28, 2011 visit. (R. 323). At a check-up on September 19, 2011, Dr. Perry recorded that Plaintiff was having "sharp left upper chest pains, strong family history. Usually not exertional. She lifts a lot at work." (R. 323).

2

On October 1, 2012, Dr. Perry performed arthrocentesis[1] on the Plaintiff's shoulder, hip, and knee. (R. 350). He also gave Plaintiff an injection at the base of that joint, in response to her complaints of thumb pain. (R. 322). At a visit on October 12, 2012, Dr. Perry recorded that Plaintiff had a "[l]ong history of carpal tunnel left wrist with numbness in fingers" and treated her with another shot at the base of the thumb. (*Id.*). On June 17, 2013, Dr. Perry noted that Plaintiff "still has some fatigue ever[y] morning when she wakes up. There is a questionable history [of] sleep apnea but never had the test. I would recommend getting that[.]" (*Id.*).

Plaintiff alleges a disability onset date of November 10, 2014 (the date she stopped working at Honda), but the record does not indicate any particular medical incident that occurred on that date. (R. 111, 175-76, 192).

On January 30, 2015, Dr. Glenn L. Wilson of Gadsden Orthopaedics Associates, PC x-rayed Plaintiff's wrist in response to her complaints of wrist pain. (R. 278). The x-ray showed "mild [degenerative joint disease] of the cmc joint. No other deformity." (*Id.*)

On February 28, 2015, Plaintiff reported excruciating chest pain that was radiating to her back and left arm. (R. 301, 303). She went to the emergency room at Gadsden Regional Medical Center and was referred to the cardiology department, where she was diagnosed as having a myocardial infarction (heart attack). (R. 301). A stent was inserted into her heart on March 2, 2015. (R. 285, 292-97, 301). Plaintiff was released from the hospital on March 3, 2015. (R. 301-02). On April 6, 2015, at the Plaintiff's post-stent follow-up appointment, Dr. G. Bruce Head III at Southern Cardiovascular Associates reported: "The patient's cardiovascular status is quite stable

---

[1] Arthrocentesis is a "surgical puncture of a joint especially for aspiration of fluid from the joint." "Arthrocentesis." Merriam-Webster Online Medical Dictionary. 2019. https://www.merriam-webster.com/medical/arthrocentesis (23 July 2019).

without recurrent angina or evidence of left ventricle dysfunction." (R. 315). Dr. Head noted that since discharge she had done "extremely well" and that there has been "no recurrence of any type of chest pain." (R. 314).

At the request of the Social Security Administration, on July 24, 2015, Dr. Celtin Robertson of MDSI Physician Group, Inc. provided a functional assessment of Plaintiff's condition. The assessment found that Plaintiff had "[n]o limitations on maximum standing/walking or sitting. No assistive device. No limitations on maximum lifting/carrying, postural activities, or manipulative activities. No limitation on workplace environmental activities." (R. 99, 358-63). Dr. Robertson also reported that Plaintiff's motor strength was "5/5 in both upper and lower extremity muscle groups including bilateral grip strength." (R. 362). He reported that Plaintiff is able to "grip and hold objects securely to the palm by the last three digits…and to grasp and manipulate both large and small objects with the first three digits." (R. 362).

On September 1, 2015, Plaintiff visited Gadsden Orthopaedics Associates, PC, complaining of worsening pain in the joint of her left hand. (R. 369). Dr. Glenn L. Wilson treated Plaintiff's hand with arthrocentesis and an injection, after identifying carpal tunnel syndrome and degenerative joint disease. (R. 369-70). Follow-up testing and imaging was performed on September 4, 2015 and confirmed the diagnosis of mild bilateral carpal tunnel syndrome. (R. 371-76). On September 15, 2015, Dr. Wilson performed electromyogram and nerve conduction velocity (EMG/NCV) tests on Plaintiff, again confirming mild bilateral carpal tunnel syndrome. (R. 368). Dr. Wilson noted on this date that Plaintiff's thumb is "better after injection." (*Id.*) On September 15, 2015 and again on February 16, 2016, Dr. Wilson treated Plaintiff's left hand with arthrocentesis and an injection to treat her arthritis and carpal tunnel syndrome. (R. 365-68).

Plaintiff visited Southern Cardiovascular Associates, PC on January 29, 2016, complaining of blood pressure issues, dull chest pain, shortness of breath, numbness of left leg, and headaches. (R. 386). The attending provider, Jennifer J. Crowder, CRNP, performed a Holter Monitor test on Plaintiff to measure her heart activity over 48 hours. (R. 389). On February 18, 2016, Plaintiff again saw Dr. Head at Southern Cardiovascular Associates, PC to review her Holter monitor test results. (R. 378-83). Dr. Head explained that her Holter test results suggested a benign non-sustained arrhythmia, with no treatment necessary. (R. 382).

In addition to her regular check-ups (R. 392-406), Plaintiff saw Dr. William B. Perry, her primary care provider, on February 12, 2016 to inquire about having carpal tunnel surgery because of pain in her left wrist. (R. 394). She also had a wrist joint aspirated again. (R. 394).

Plaintiff was admitted to Gadsden Regional Medical Center again on August 26, 2016 for nausea, heart palpitations, weakness, and intermittent chest pain. (R. 408-27). The attending physician, Dr. Sunil J. Jaiswal, referred her to Dr. Head. (R. 412), who referred her for an outpatient cardiovascular stress test with nuclear imaging, stating that he did not see evidence of ischemic syndrome and that her bradycardia was related to her blocker therapy. (R. 410). She was discharged from the hospital on August 27, 2016. (R. 412-13). A cardiovascular stress test performed on September 12, 2016 revealed normal left ventricular function and no evidence of recurrent myocardial ischemia. (R. 429). Left ventricular ejection fraction was 60%. (*Id.*). Reviewing this stress test on October 6, 2016, Dr. Head explained to Plaintiff that the test did not indicate any recurrent obstruction in the coronary arteries and discussed management of her low heart rate. (R. 433).

In documents submitted to the Social Security Administration, Plaintiff described her daily activities as cooking, cleaning, shopping, sewing, and caring for pets. (R. 209-16, 221-23).

Plaintiff's mother-in-law reported that Plaintiff shops, cleans house, does laundry, cooks meals with several courses, and cares for pets. (R. 226-33).

In Plaintiff's Work History Report submitted to the ALJ, she described working as a stock clerk at Piedmont Salvage Grocery from 2000 to 2004, building parts for Honda vehicles at KTH in 2004, and working as a motor vehicle assembler at Honda from 2004 to 2010. (R. 201). Plaintiff submitted a Work History Report, which described the duties of her past relevant work, including how much weight she lifted, how many hours she sat, stood, and walked, as well as the amount of time she engaged in postural and manipulative functions. (R. 202-05). She lifted no more than twenty pounds in her role as a stock clerk. (R. 202-03).

At the December 13, 2016 hearing held before the ALJ, Plaintiff provided additional information about her work history and health, and a vocational expert ("VE") testified. (R. 78-96). Plaintiff testified that she wipes down cabinets and vacuums, but she has to take breaks every twenty to thirty minutes. (R. 86). She receives little help from others with chores because her husband is disabled, having recently had hip replacement surgery. (R. 87). She also testified that she spends at least half the day sitting in a recliner because of achy joints. (R. 87). The VE asked Plaintiff whether it was correct that she only lifted twenty pounds as a stock clerk, and she confirmed that was the case. (R. 82-83).

The VE testified that the *Dictionary of Occupational Titles* ("DOT") classifies the job of "motor vehicle assembler" as involving medium exertion and "stock clerk" as involving heavy exertion. (R. 83-84). While the DOT classifies a stock clerk's duties under "heavy exertion," the VE stated that Plaintiff performed that job at light exertion, based on her testimony that she only lifted twenty pounds. (R. 84). Later, the ALJ asked the VE the following hypothetical:

> Let me ask you, Dr. Green, about something beyond this question about transferable skills. Let's look at this from someone with medium capacity who wouldn't be asked to climb

6

any ladders, or ropes, or scaffolds, avoid any dangerous machinery or unprotected heights, avoid any extreme temperatures, and I want you to reduce fingering on the left to frequent instead of constant. Let's start with that question. Would motor vehicle assembler or stock clerk still be available?

(R. 91). The VE testified that he would eliminate the stock clerk job because of the ladders, but he would retain the motor vehicle assembler job. (*Id.*). Regarding Plaintiff's fatigue, the ALJ also asked how much unscheduled absenteeism would be tolerated for these two types of jobs, to which the VE replied one to two absences per month. (R. 92).

Regarding her anxiety and depression claims, Plaintiff testified that she talked to Dr. Perry, her primary care physician, about her mental health, but never sought any services from a mental health specialist. (R. 93). Dr. Perry first prescribed Effexor, a nerve pain medication and anti-depressant, to Plaintiff in 2004. (R. 327). Plaintiff's medical record notes that Dr. Perry prescribed Effexor as late as September 15, 2014. (R. 329).

### III. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix

7

1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). At the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 10, 2014, the alleged date of disability onset, and has the severe impairments of coronary artery disease, status post myocardial infarction and artery stenting, mild carpal tunnel syndrome, mild joint disease/arthritis, and mild obesity. (R. 13).

At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in CFR Part 404, Subpart P, Appendix 1. (R. 14). The ALJ determined that Plaintiff has the RFC to perform medium work as defined in 20 CFR 404.1567(c), except she is limited to

occasional climbing of ladders, ropes, and scaffolds; frequent, but not constant, fingering; and no exposure to extreme temperatures. (R. 15). At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a motor vehicle assembler and stock clerk. (R. 18). Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*)

IV. **Plaintiff's Argument for Remand or Reversal**

Plaintiff argues that the ALJ's finding that she can perform her past work is not supported by substantial evidence and is not in accordance with proper legal standards.[2] (Pl.'s Br., Doc. #8 at 12-15, 17-19). The court addresses this argument below.

V. **Standard of Review**

The only relevant questions for this Court to decide are whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under 42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence." The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by substantial evidence. *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id.* (citing

---

[2] The Plaintiff also argues that the ALJ failed to properly consider her "excellent work history"; however, neither the Eleventh Circuit nor the Social Security Rules requires the ALJ to consider excellent work history in the determination of Plaintiff's subjective complaints. *See Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *7 (N.D. Ala. Mar. 20, 2019).

*Bloodworth*, 703 F.2d at 1239). Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id.* Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**VI.     Discussion**

A claimant "bears the burden of proving that she is disabled, and consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Upon review of the record as a whole, the court concludes that Plaintiff has not met this burden; thus, the court holds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff could perform her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Plaintiff argues the ALJ failed to consider all relevant duties of her past work at Honda and failed to evaluate her ability to perform those duties in light of the impairments caused by heart attack, carpal tunnel syndrome, depression, anxiety, and mood disorders. (Pl.'s Br., Doc. #8 at 12, 17-19). For the reasons explained below, this argument fails.

### A. The ALJ Properly Considered Plaintiff's Subjective Complaints in Determining Plaintiff Can Perform Past Relevant Work[3]

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The RFC represents the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a). When evaluating a claimant's RFC, the ALJ must base her findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments. 20 C.F.R. § 416.945(a)(3); *see Phillips*, 357 F.3d at 1238.

This court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Rather, it must defer to the Commissioner's decision if it is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Furthermore, there is no requirement that the ALJ specifically refer to every piece of evidence that he used to render his decision; instead, the ALJ's decision has to demonstrate to this court that he considered the claimant's medical condition in its entirety. *Adams v. Commissioner*, 586 Fed. Appx. 531, 533 (11th Cir. 2014).

When a claimant attempts to establish disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence

---

[3] As noted earlier, Plaintiff makes an additional argument that the ALJ failed to consider her "excellent work history" in reaching his conclusion. *See* footnote 2, *supra*. Hidden in this argument is another contention which suggests that the ALJ failed to consider Plaintiff's impairments caused by carpal tunnel syndrome, depression, anxiety, and mood disorders. (Doc. #8 at 3-5, 17-19; Doc. #13 at 7-9). "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue[.]" *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Because Plaintiff's briefs do not present adequate argument on this issue, the court is under no obligation to consider it. *See Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019). However, out of an abundance of caution, the court here considers whether the ALJ properly considered Plaintiff's subjective complaints of pain in determining that she is capable of performing past relevant work.

confirming the severity of the alleged symptoms or that the medical condition could reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. *See* 20 C.F.R. § 404.1529(c)(1); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). When evaluating the credibility of claimant's intensity, persistence, or limiting effects of her symptoms, the ALJ may consider a claimant's daily activities; the location, duration, frequency, and intensity of claimant's symptoms; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication; treatment the claimant receives; any measures the claimant uses to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ determined that Plaintiff has the residual functional capacity to perform medium work, except she is limited to occasional climbing of ladders, ropes, and scaffolds; frequent, but not constant, fingering; and cannot have exposure to extreme temperatures. (R. 15). The ALJ further found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence. (R. 18). In reaching this determination, the ALJ specifically stated that he considered the entirety of Plaintiff's symptoms, in light of the reasonable, objective medical evidence and other evidence (including Plaintiff's testimony). (*Id.*). The ALJ also detailed several pieces of evidence that he evaluated, including: Plaintiff's personal testimony and third-party statements

regarding her daily activities; records indicating Plaintiff's positive response to cardiac care; records indicating only mild joint disease; and Plaintiff's medication regimen. (R. 15-18).

In his evaluation, the ALJ considered that while Plaintiff stated that she spends half her day in her recliner due to arthritis in her joints, her other testimony and that of her mother-in-law's report suggest that she is actively taking care of the home and her disabled husband. (R. 16-17). The ALJ considered evidence that an artery blockage was effectively treated and objective testing did not indicate any serious damage to her heart. (R. 16, 314-15, 410, 429, 433). Regarding Plaintiff's carpal tunnel syndrome, the ALJ considered medical evidence indicating that her condition was mild and that she maintained good grip strength. (R. 17, 278, 362, 365-66, 368, 371). While there were changes in her medication regimens over time, the ALJ found that there were no chronic substantial medication side effects that could be reasonably deemed as debilitating. (R. 17).

After careful review, the court concludes that the ALJ's fact finding in this area is supported by substantial evidence.

### B. The ALJ's Finding that Plaintiff Can Perform Past Relevant Work is Supported by Substantial Evidence

To support a conclusion that a claimant is able to return to her past relevant work, the ALJ must consider all duties and evaluate the claimant's ability to perform them in spite of her impairments. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). Plaintiff argues that the ALJ failed to make a finding of the physical requirements and demands of past work and therefore, the ALJ failed to properly assess her RFC to perform past work. *See Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) (summarily reversing a denial of benefits for failure to develop the record of claimant's past work). For the reasons explained below, this argument fails.

Where there is no evidence of the physical requirements and demands of the claimant's past work, and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform her past relevant work. *Nelms,* 803 F.2d at 1164; *see also Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). Here, however, the ALJ used a vocational expert, the *Dictionary of Occupational Titles* (DOT), medical records, and Plaintiff's own testimony and Work History Report in determining that Plaintiff could perform her past relevant work. (R. 15-18, 84-90, 202-05). These sources were sufficient to satisfy the ALJ's duty. *See e.g., Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 952-53 (11th Cir. 2010) (rejecting claimant's failure to develop the record argument where the record demonstrated the ALJ considered the DOT and VE's testimony).

The VE testified that Plaintiff would be able to perform her past relevant work as a motor vehicle assembler as the job is generally performed and as a stock clerk as the job was actually performed. (R. 18, 83-84, 91-92). The ALJ and the VE reviewed the DOT entries for motor vehicle assembler and stock clerk, which described the duties and demands of these jobs as they are generally performed. (R. 18). Beyond reviewing the DOT's descriptions of how these jobs are generally performed, the ALJ considered how Plaintiff actually performed these jobs. (*Id.*). The Work History Report that Plaintiff submitted, which described Plaintiff's past duties, described how much weight the Plaintiff lifted, how many hours Plaintiff sat, stood, or walked as well as the amount of time Plaintiff engaged in postural and manipulative functions. (R. 202-05). When Plaintiff testified that she only lifted twenty pounds as a stock clerk, which conflicted with the DOT's assessment that the job requires "heavy exertion," the VE confirmed with Plaintiff that she actually performed the stock clerk position at the light level. (R. 18, 202-05, 82-83).

14

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Here, the ALJ carefully considered the "entire record" and "all symptoms" in making the RFC finding (R. 15), then included the limitations from the RFC finding in the hypothetical question posed to the VE. (R. 91-92).

Plaintiff has failed to demonstrate that the ALJ's RFC limiting her to medium work inadequately accounted for her impairments. (Pl.'s Br., Doc. #8 at 12, 17-19). Although Plaintiff argues that the RFC did not account for her alleged depression, anxiety, and mood disorder (Pl.'s Br., Doc. #8 at 17), Plaintiff concedes that she has not seen a mental health specialist and denied depression and anxiety in recent records. (R. 14, 93, 378, 380, 410, 424, 441). The ALJ is not required to include findings in the hypothetical question that he finds unsupported. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence.

## VII. Conclusion

The court concludes that the ALJ's determination that the Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this July 29, 2019.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE